UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

MARY M.,

       Plaintiff,

v.                 3:18-CV-1360 (TWD)

ANDREW SAUL,[1]

       Defendant.
_____

APPEARANCES:            OF COUNSEL:

LACHMAN & GORTON         PETER A. GORTON, ESQ.
 *Counsel for Plaintiff*
P.O. Box 89
1500 East Main Street
Endicott, New York 13761-0089

U.S. SOCIAL SECURITY ADMIN.     EMILY M. FISHMAN, ESQ.
OFFICE OF REG'L GEN. COUNSEL
REGION II
 *Counsel for Defendant*
26 Federal Plaza - Room 3904
New York, NY 10278


THÉRÈSE WILEY DANCKS, United States Magistrate Judge

## DECISION AND ORDER

   Currently before the Court, in this Social Security action filed by Mary M. ("Plaintiff") against Andrew Saul, the Commissioner of Social Security ("Defendant" or "the Commissioner") pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), are Plaintiff's motion for judgment on the pleadings and Defendant's motion for judgment on the pleadings. (Dkt. Nos. 11

---

[1] Andrew Saul was sworn in as Commissioner of The Social Security Administration on June 17, 2019. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Andrew Saul is substituted for Acting Commissioner Nancy A. Berryhill as the defendant in this suit.

and 12.) For the reasons set forth below, Plaintiff's motion for judgment on the pleadings is granted and Defendant's motion for judgment on the pleadings is denied.

I. **RELEVANT BACKGROUND**

Plaintiff applied for a period of disability and disability insurance benefits as well as Supplemental Security Income on June 22, 2015, alleging disability beginning May 29, 2015. (T. 15, 62-64, 71, 144-58.)[2] She subsequently amended her alleged onset date to January 1, 2017. (T. 15, 17, 35-36.) Plaintiff's applications were initially denied on September 25, 2015, after which she timely requested a hearing before an Administrative Law Judge ("ALJ"). She appeared at an administrative hearing before ALJ Kenneth Theurer on August 30, 2017. (T. 30-61.) On October 25, 2017, the ALJ issued a written decision finding Plaintiff was not disabled under the Social Security Act. (T. 12-26.) On September 25, 2018, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. (T. 1-6.)

In his decision, the ALJ found Plaintiff had the following severe impairments: right shoulder pain status-post surgery, right hand pain and cramping with right ulnar nerve irritation, lateral epicondylitis of the left arm, and cubital tunnel syndrome of the left arm. (T. at 17.) However, he concluded these impairments did not meet or medically equal one of the listed impairments in 20 C.F.R. § 404, Subpart P, App. 1 (the "Listings"). (T. 19.) Based on these impairments and the other evidence, the ALJ found Plaintiff had the residual functional capacity ("RFC") to perform less than the full range of light work as follows:

> with ability to lift/carry 10 pounds occasionally; sit 6 hours in a routine 8-hour workday; and stand/walk 6 hours total in such a workday with normal breaks; occasionally climb ramps or stairs; never climb ladders/ropes/scaffolds; and occasionally balance,

---

[2] The Administrative Transcript is found at Dkt. No. 8. Citations to the Administrative Transcript will be referenced as "T." and the Bates-stamped page numbers as set forth therein will be used rather than the page numbers assigned by the Court's CM/ECF electronic filing system.

> stoop, kneel, crouch, and crawl. She can occasionally reach with her right arm, with no restrictions on her left arm; and should not perform more than occasional fine manipulation such as repetitive hand-finger actions, fingering or feeling with her right hand, but retains the ability to grasp, hold, turn, raise and lower objects with either hand.

(T. 20.) Given her RFC, the ALJ found there were jobs existing in significant numbers in the national economy Plaintiff could perform. (T. 22-23.) The ALJ therefore concluded Plaintiff is not disabled. (T. 23.)

In the present appeal, Plaintiff argues the ALJ failed to properly weigh the medical opinion evidence and assess her limitations which resulted in an erroneous RFC; and substantial evidence does not support the ALJ's determination that there were jobs in the national economy she could perform. (Dkt. No. 11 at 9-20.)[3] Defendant contends the ALJ properly weighed the opinion evidence and assessed Plaintiff's limitations and substantial evidence supports the RFC finding and the ALJ's other conclusions. (Dkt. No. 12 at 8-26.)

## II. DISCUSSION

### A. Scope of Review

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision. *Featherly v. Astrue*, 793 F. Supp. 2d 627, 630 (W.D.N.Y. 2011) (citations omitted); *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992) (citing *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987)). A reviewing court may not affirm the ALJ's decision if it reasonably doubts whether the proper legal standards were applied, even if the decision appears to be supported by substantial evidence. *Johnson*, 817 F.2d at 986.

---

[3] Plaintiff filed a motion to allow a reply brief which the Court denied because the matters addressed in the proposed reply brief were not new. (Dkt. Nos. 13, 14.)

A court's factual review of the Commissioner's final decision is limited to the determination of whether there is substantial evidence in the record to support the decision. 42 U.S.C. § 405(g) (2015); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991). To facilitate the Court's review, an ALJ must set forth the crucial factors justifying her findings with sufficient specificity to allow a court to determine whether substantial evidence supports the decision. *Roat v. Barnhart*, 717 F. Supp. 2d 241, 248 (N.D.N.Y. 2010); *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984). "Substantial evidence has been defined as 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Williams ex rel. Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988) (citations omitted). It must be "more than a mere scintilla" of evidence scattered throughout the administrative record. *Featherly*, 793 F. Supp. 2d at 630; *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

"To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams*, 859 F.2d at 258 (citations omitted). Where substantial evidence supports the ALJ's findings they must be sustained "even where substantial evidence may support the plaintiff's positions and despite that the court's independent analysis of the evidence may differ from the [ALJ's]." *Rosado*, 805 F. Supp. at 153. In other words, a reviewing court cannot substitute its interpretation of the administrative record for that of the Commissioner if the record contains substantial support for the ALJ's decision. *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

B.    **Standard for Benefits**[4]

To be considered disabled, a plaintiff-claimant seeking benefits must establish that he or she is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 1382c(a)(3)(A).  In addition, the plaintiff-claimant's

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

*Id*. § 1382c(a)(3)(B).

Acting pursuant to its statutory rulemaking authority (42 U.S.C. § 405(a)), the Social Security Administration ("SSA") promulgated regulations establishing a five-step sequential evaluation process to determine disability.  20 C.F.R. § 416.920(a)(4).  Under that five-step sequential evaluation process, the decision-maker determines:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a "residual functional capacity" assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

---

[4] **The requirements for establishing disability under Title XVI, 42 U.S.C. § 1382c(a)(3) and Title II, 42 U.S.C. § 423(d), are identical, so "decisions under these sections are cited interchangeably."** ***Donato v. Sec'y of Health and Human Servs.*, 721 F.2d 414, 418 n.3 (2d Cir. 1983) (citation omitted).**

5

*McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014). "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further." *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003).

### C. Weighing the Medical Evidence and Plaintiff's RFC

As noted above, Plaintiff argues substantial evidence does not support the RFC determination because the ALJ erred in weighing the opinion evidence of Plaintiff's treating providers. (Dkt. No. 11 at 9-17.) Specifically, Plaintiff contends the ALJ failed to properly weigh Dr. Lissy's opinion regarding her ability use her right hand.

Under Second Circuit precedent and the applicable regulations, an ALJ must follow a two-step procedure to determine the appropriate weight to assign to the opinion of a treating physician. *See Estrella v. Berryhill*, 925 F.3d 90, 95 (2d Cir. 2019). At step one, the ALJ must decide whether the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record." *Id*. If the opinion meets these criteria, then it is "entitled to controlling weight." *Id*. Otherwise, the ALJ must proceed to step two and "determine how much weight, if any, to give" the opinion. *Id*. At step two, the ALJ must "explicitly consider" the following factors derived from the Second Circuit's decision in *Burgess v. Astrue*, 537 F.3d 117 (2d Cir. 2008): "(1) the frequency, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist." *Estrella*, 925 F.3d at 95–96. At both steps one and two, "the ALJ must give good reasons in its notice of determination or decision for the weight it gives the treating source's medical opinion." *Id*. at 96. Moreover, the "failure to explicitly apply the *Burgess* factors when assigning weight at step two is a procedural error," and

6

unless the ALJ has "otherwise provided good reasons for its weight assignment," remand is appropriate. *Id*. However, if "a searching review of the record assures us that the substance of the treating physician rule was not traversed," the court will affirm the ALJ's decision. *Id*.

In the RFC determination, the ALJ found Plaintiff can occasionally[5] reach with her right arm. (T. 20.) In so doing, the ALJ afforded only partial weight to Dr. Lissy's opinion, noting his limitations were "not consistent with the entire record at this time, and also are based only in the doctor's specialty area." (T. 21.) As Plaintiff notes, the ALJ does not explicitly address Dr. Lissy's opined limitation that Plaintiff could use her right arm and hand for reaching and handling for less than one-third of a working day, or less than occasionally. (T. 354.) Further, the ALJ's analysis here is confusing at best, because he appears to afford more weight to Dr. Kuo's opinion—that Plaintiff could reach with her right arm occasionally—and discounted Dr. Lissy's opinion—that Plaintiff could reach with her right arm *less than* occasionally—when both doctors are orthopedic surgeons and treating physicians without providing any good reasons for the distinction. (T. 21, 351.)

The Court's review indicates both Dr. Lissy and Dr. Kuo treated Plaintiff along with other providers at UHS Orthopedics Binghamton for her right arm impairments beginning in 2015 and the doctors offered opinions on those conditions separately in August 2017. (T. 12, 278-323, 330-55.) The record also reflects Dr. Lissy performed Plaintiff's right shoulder decompression surgery in June 2015 prior to offering his August 2017 opinion on her limitations. (T. 314-16.) The ALJ's distinction between the opinions of Dr. Lissy and Dr. Kuo is therefore not a good reason to reject Dr. Lissy's opinion.

---

[5] "'Occasionally means occurring from very little up to one-third of the time.'" SSR 83-10, 1983 WL 31251, *5 (Jan. 1, 1983); *Selian v. Astrue*, 708 F.3d 409, 422 (2d Cir. 2013).

Plaintiff also contends Dr. Kuo's assessment of occasional limitations to reaching does not constitute substantial *inconsistent* evidence because his opinion was limited to assessing Plaintiff's hand and wrist impairments and did not take into account Plaintiff's shoulder. (Dkt. No. 11 at 12-13, 17; T. 349-51.) The two opinions from the treating orthopedic surgeons clearly denote the conditions on which they were opining, right wrist and hand conditions for Dr. Kuo and right shoulder impairment for Dr. Lissy. (T. 349, 352.) Although Dr. Kuo may have examined and assessed Plaintiff's right shoulder impairment, his treatment notes of record indicate he focused more on treatment of her right wrist and hand impairments rather than her right shoulder. (T. 278-323, 330-47.) For example, Dr. Kuo performed Plaintiff's right wrist de Quervain's release in March 2016 and subsequent treatment notes from July 2017 indicate further discussion with Dr. Kuo was planned regarding left arm tennis elbow and cubital tunnel work. (T. 331, 340.) Thus, Dr. Kuo's opinion was complimentary—not contradictory—to Dr. Lissy's opinion regarding Plaintiff's right-side impairments.

Defendant maintains "Dr. Kuo was aware of Plaintiff's history of a right shoulder condition and, as such, would have considered it in his opinion that Plaintiff could reach and handle occasionally with the right arm." (Dkt. No. 12 at 15-17; T. 291, 342, 345, 351.) Although Dr. Kuo wrote on the assessment form he evaluated Plaintiff based on her right wrist and hand conditions, Defendant maintains "this is likely due to the fact that Plaintiff had not recently complained about or sought treatment for her right shoulder condition." (Dkt. No. 12 at 16.) The Court does not find these arguments persuasive. Although Dr. Kuo may have been aware of Plaintiff's right shoulder impairment and even considered it in his assessment, the evidence does not support the contention that his opinion was somehow entitled to more weight than Dr. Lissy's or that it should have been relied upon by the ALJ to reject Dr. Lissy's opinion.

(T. 348-51.) For example, Plaintiff's treating records from UHS Orthopedics indicate plans were made for her to follow-up with both Dr. Kuo and Dr. Lissy for completion of disability paperwork. (T. 331.) This would indicate both physicians' input was needed to fully assess Plaintiff's "injuries and surgeries of the right arm." *Id*.

The ALJ's analysis appears to rely on Dr. Kuo's opinion that Plaintiff could reach up to one-third of a working day with the right side to (1) discount and afford only partial weight to the opinion from Dr. Lissy and (2) find Plaintiff retained the ability to reach occasionally with her right arm. (T. 20-21.) However, the content of Dr. Kuo's opinion alone is not a good enough reason to reject the opinion of Plaintiff's other treating physician, Dr. Lissy. *See Estrella*, 925 F.3d at 96. (noting "the ALJ must give good reasons in its notice of determination or decision for the weight it gives the treating source's medical opinion.").

The ALJ's rejection of the right-sided limitations opined by consultative examiner Dr. Magurno is similarly unsupported. (T. 21.) The ALJ indicated Dr. Magurno's opinion was based on a one-time visit and not consistent with the record as a whole, but the Court's review does not find support for these reasons. (T. 21, 327.) For example, the orthopedic treatment records indicate Plaintiff experienced ongoing issues with both the right and left upper extremities throughout 2016 and 2017 following Dr. Magurno's September 2015 examination and opinion; these longstanding issues offer support for the opinions of Plaintiff's treating sources and do not indicate her presentation at the consultative examination was an anomaly. (T. 324-47.)

In sum, the ALJ's two-paragraph assessment of the medical opinions appears conclusory because the ALJ did not cite any inconsistent evidence in rejecting the opined limitations in right-sided reaching from both Dr. Lissy and Dr. Magurno. (Dkt. No. 11 at 15; T. 21.) *See*

9

*Coleman v. Comm'r of Soc. Sec.*, 14-CV-1139, 2015 WL 9685548, at *5 (N.D.N.Y. Dec. 11, 2015) (quoting *LaRock ex. rel. M.K. v. Astrue*, 10-CV-1019, 2011 WL 1882292, at *7 (N.D.N.Y. Apr. 29, 2011)) ("'an ALJ is not required to discuss in depth every piece of evidence contained in the record, so long as the evidence of record permits the Court to glean the rationale of an ALJ's decision.'"). Here, while the ALJ summarized some of the medical evidence in assessing Plaintiff's severe impairments, he did not point to any inconsistent evidence when concluding the opinions of Dr. Magurno and Dr. Lissy were not consistent with the record as a whole. (T. 18-19, 21.)

The Court therefore finds the ALJ's analysis of Plaintiff's RFC and the medical opinions is not supported by substantial evidence and remand is required.

Because remand is necessary to address the issues identified above, the Court declines to reach a finding on Plaintiff's other arguments regarding the ALJ's failure to properly consider the opinions on Plaintiff's limitations in work pace and/or attendance and the Step Five determination. (Dkt. No. 11 at 17-20; T. 350, 352-53.) However, upon remand, the ALJ should conduct a new analysis of the opinion evidence and a new Step Five determination.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 11) is **GRANTED**; and it is further

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 12) is **DENIED**; and it is further

**ORDERED** that the decision of the Commissioner is **REVERSED** and this case **REMANDED**, pursuant to sentence four of 42 U.S.C. § 405(g), for a proper evaluation of the

medical opinions and Plaintiff's RFC, in particular Plaintiff's ability to reach occasionally with her right arm, and other further proceedings, consistent with this Report.

Dated: March 18, 2020  
Syracuse, New York

S

_____  
Thérèse Wiley Dancks  
United States Magistrate Judge